[No. 10856.   Department Two.   July 31, 1913.]

E. R. BUTTERWORTH, *Respondent* ·v. REA F. BREDEMEYER, *Appellant.*[1]

TRIAL—DIRECTION OF VERDICT—PROVINCE OF COURT AND JURY—
QUESTIONS FOR JURY.  Upon a challenge to the sufficiency of the evi-
dence to sustain a partial defense to the action, the court, upon prop-
erly denying the challenge, should submit that issue to the jury and
take its verdict thereon, together with its verdict on the other de-
fenses, and it is error to take the verdict upon the main defenses only,
and then set the verdict aside and determine the remaining questions
of fact without the aid of the jury.

ALTERATION OF INSTRUMENTS—EVIDENCE—SUFFICIENCY.  Where de-
fendant testified positively that the contract sued on had been ma-
terially altered, and her testimony was corroborated in minor par-
ticulars by one witness and by various circumstances, there is
abundant evidence to support a finding in favor of the defendant,
although she was contradicted as to the alteration.

HUSBAND AND WIFE—LIABILITY OF WIFE FOR FUNERAL EXPENSES.
Under Rem. & Bal. Code, § 1568, making the funeral expenses a pre-
ferred claim against the estate, the wife's liability for her husband's
funeral expenses is secondary and not primary, and in the absence
of an express promise cannot be enforced until the creditor has ex-
hausted his remedy against the estate.

SAME—IMPLIED PROMISE.  A mere direction to furnish service for
a husband's funeral is presumed to be made on the faith of the credit
of the estate, and does not imply a promise to pay for the same.

Appeal from a judgment of the superior court for King
county, Ronald, J., entered May 23, 1912, in favor of the
plaintiff, notwithstanding the verdict of a jury rendered in
favor of the defendant, in an action on contract.   Reversed.

*Jay C. Allen*, for appellant.

*Karr & Gregory*, for respondent.

FULLERTON, J.—The respondent, plaintiff below, brought
this action against the appellant to recover for services ren-
dered and for funeral supplies furnished and used at the

[1]Reported in 133 Pac. 1061.

funeral of the appellant's husband.   The cause was before
this court in *Butterworth v. Bredemeyer*, 62 Wash. 134, 113
Pac. 253, in which the complaint, aided by the bill of par-
ticulars, was held sufficient to state a cause of action.   The
complaint, with the aid of a writing set forth in the bill of
particulars, showed an express promise on the part of the
appellant to pay for the services and furnishings a fixed sum
of money.   On the return of the cause to the superior court,
the appellant answered, denying the material allegations of
the complaint and pleading affirmatively that there had been
a material alteration in the writing set forth subsequent to
the time the appellant placed her signature thereto.   A reply
was filed to the answer, and on the issues made, the cause was
tried before a jury, which returned a verdict in favor of the
appellant.   This verdict, on the motion of the respondent,
was set aside by the court.   The court, however, found that
the contract had not been performed in its entirety, even as
it found it written, and entered judgment for the amount
shown by the writing to be due, less a sum he found would
compensate the appellant for the failure to perform the con-
tract in its entirety.   From the judgment so entered, the
present appeal is taken.

The court set aside the verdict of the jury on the ground
that the evidence was insufficient to justify the finding that
a material alteration had been made in the writing subse-
quent to its execution by the appellant.   But if we concede
this conclusion to be justified, there was still error in the
action of court when it directed judgment to be entered for
the respondent.   If it be true that the evidence did not
justify a finding that the writing relied upon for a recovery
had been materially altered, but did justify a finding that it
had been only partially performed, permitting of a recov-
ery only for a lesser sum than the amount stated in the writ-
ing to be due, then the proper procedure was to so instruct
the jury and take their verdict on the recovery properly
to be allowed.   This the court did not do, although its atten-

tion was called to the proper practice by the attorney for the respondent. It submitted the question of the alteration of the instrument to the jury, took their verdict thereon, and then set the verdict aside and determined the remaining questions of fact without the aid of the jury. Unless the right of trial by jury no longer remains inviolate in this state, this was manifest error.

But we think the court erred in setting aside the jury's verdict on the principal question of fact involved. The promise sued upon was written on a bill-head of the respondent. Omitting the advertising matter, it read as follows:

<blockquote>
"Seattle, Wash., May 10, 1910.

"Mrs. Rea F. Bredemeyer, to E. R. Butterworth & Sons, Dr.

 Solid oak black casket,

 3 hacks and pall coach,

 Funeral car,

 Incineration fee,

 Partial embalming and all services for funeral of

 J. A. O. Bredemeyer     $393.00

"O. K. as arranged and payment guaranteed inside of thirty days.      Rea F. Bredemeyer."
</blockquote>

The evidence does not disclose who summoned the respondent to the appellant's residence on the death of her husband, but it appears that a representative of the respondent appeared there on the evening of the day of the husband's death and laid out the body, and that on the next morning another representative appeared to ascertain what arrangements were desired for the funeral. The evidence is in conflict as to the occurrences between the appellant and this representative; but the appellant testified that, in answer to the representative's inquiry as to the character of funeral desired, she stated to him that her husband desired to be cremated, and that while she wanted the funeral neat, she wished it made as inexpensive as possible; that they looked over a catalogue containing descriptions and pictures of caskets, and that the agent pointed out one of solid oak as suitable for the purpose; that she inquired if a less expensive one might not

answer the purpose inasmuch as the body was to be cremated, but was assured by the representative that the solid oak casket was the only one suitable for the purpose, and that she consented to the selection of the particular casket on the faith of his representations; that other furnishings were talked over, and as they were agreed upon, the representative would put them down on a paper; that after they had concluded, he passed the paper over to her and requested her signature upon it; that she inquired as to the purpose of having her sign it, and was assured that it was "only to show the office that this is what you want." She testified further that nothing was said about prices during the negotiations; that she was not asked to, and did not, guarantee payment of the furnishings selected; that the cost of the same was not written on the paper when she put her name thereto, nor was any guarantee of payment written thereon.

The appellant was corroborated as to the conversation that occurred between herself and the representative by a lady, a neighbor of the appellant, who stood at the back of appellant's chair while the arrangements were being made. The witness, however, was not able to say what was written on the paper prior to the signing by the appellant. While she corroborates the appellant as to the purpose for which the representative stated he desired the appellant's signature, she did not examine the writing sufficiently close to know what it contained. There were other circumstances shown, also, which lend color to the appellant's version of the transaction. There is a printed form of guaranty on the back of the paper, prepared for execution in the presence of a witness, which it seems might have been used had the transaction been entirely open and aboveboard; the casket selected was excessively large (so much so, indeed, that it could not be carried through the hallway of the house, and had to be put in and taken out through a window), while Mr. Bredemeyer was a very small man, and when placed therein, "looked like a child" in comparison with his surroundings; and the repre-

sentative when testifying to the occurrences at the time, puts a phrase into the mouth of appellant which she testified she never uses, and which it appears she could hardly have used, even had she been addicted to it, under the circumstances shown here.

But it is not necessary to pursue the inquiry. There was here abundant evidence to carry the question of the guarantee to the jury, and the court was right in submitting the question of fact to them in the first instance, but in error in setting aside the verdict on the ground that the evidence was insufficient to support their finding.

The respondent argues that a promise to pay for funeral services and findings arises from the order given to furnish them, and that in this case a recovery can be had against the appellant on the implied promise, even if the proofs of the direct promise fail. It may be that a wife is liable for the reasonable funeral expenses of her husband whether she expressly promises to pay for them or not (*Butterworth & Sons v. Teale*, 54 Wash. 14, 102 Pac. 768) ; but in the absence of an express promise, her liability therefor is secondary and not primary. As was held by the supreme judicial court of Maine in *Phillips v. Phillips*, 87 Me. 324, 32 Atl. 963, the necessity of a decent burial arises immediately after the decease, and the law, both ancient and modern, pledges the credit of the estate for the payment of such reasonable sums as may be necessary for that purpose, even though such expenses may have been incurred after the death and before the appointment of an administrator. In this state the funeral expenses of a deceased person are made by statute a preferred charge against his estate. Rem. & Bal. Code, § 1568 (P. C. 409 § 553) ; *Cunningham v. Lakin*, 50 Wash. 394, 97 Pac. 447. Under this statute, the liability of the estate must be regarded as primary, and the rule in such a case, as in other cases of primary and secondary liability, is that the creditor must exhaust his remedy against the primary fund before he can resort to the secondary fund. It is not denied, of

course, that an express promise to pay the expenses of a funeral will create a primary liability against the person so promising, but it is meant that nothing less than an express promise will create such a liability. In other words, a mere direction to furnish such service and supplies is presumed to be made on the faith of the credit of the estate, and nothing short of an order and an express promise to pay for the furnishings by the person giving the order will create a primary liability on his part.

The judgment is reversed, and remanded with instructions to overrule the motion for judgment *non obstante veredicto*, and proceed to a final judgment in the cause in accordance with the usual course of practice.

MAIN, ELLIS, and MORRIS, JJ., concur.