[No. 11991. Department Two. November 17, 1914.]

CHARLES E. ANDERSON, *Appellant*, v. ROBERT KOEN, *Respondent*.[1]

DEAD BODIES—CONTRACTS—BURIAL EXPENSES—PRESUMPTIONS. The presumption that an ordinary direction to an undertaker to take charge of a dead body was made on behalf of the estate, and does not create a primary liability upon the party giving the order to pay burial expenses, does not apply where there was no appreciable estate, in which case, resort may be had to the party giving the order in the first instance.

SAME—CONTRACTS—TRANSPORTATION — LIABILITY — PRESUMPTIONS. The presumption that an ordinary direction to an undertaker to take charge of a dead body was made on behalf of the estate, does not apply where a party gave directions to bring out and transport a dead body "regardless of expense" and deliver it to an undertaker; since the contract was one for transportation standing on the same plane as similar contracts by transportation companies.

SAME—CONTRACTS—MUTUAL ASSENT—TRANSMITTED BY THIRD PERSON. Where defendant requested one K. to give a telephone message directing the bringing out and transportation of a dead body, and was informed of, and approved, the form of the message, defendant is liable for the reasonable cost of the undertaking.

Appeal from a judgment of the superior court for King county, Dykeman, J., entered January 24, 1914, upon findings in favor of the defendant, in an action for services rendered, tried to the court. Modified.

*Geo. D. Emery*, for appellant.

*Saunders & Nelson*, for respondent.

FULLERTON, J.—Frank Eccesrsky died at Silverton, Washington, on the night of January 22, 1913. On the day following, the appellant, Anderson, sent a message to the respondent, Koen, at Seattle, Washington, notifying him of the fact, and requesting an answer. Koen, on receiving the message, called one Lee, an undertaker residing at Granite Falls, requesting him to communicate with Silverton, and

[1]Reported in 144 Pac. 35.

have some one bring the body of Eccesrsky to Robe, where he would meet it. Lee was not able to deliver the message because of the fact that a severe storm then prevailing had cut off the means of communication. After failing to get a message by telephone, he sought to communicate with Anderson by telegraph, and went to the telegraph office and submitted a message addressed to him directing him to send the body down to Robe. This message he was also unable to get through. One Kelley, who was with him, then suggested that he, Kelley, could get a message to his brother, who resided at Silverton. The respondent told him to do so, whereupon Kelley sent his brother the following message:

"Get Frank Eccesrsky down to Robe Monday, regardless of expense. Koen will meet you there."

On returning from the telephone booth, he informed the respondent of the nature of the message, who responded, "All right." The receiver of the message communicated it to Anderson, and he, with others, prepared to take the body out on a hand sled, the ordinary means of travel being cut off by the storm. Later on, while preparations for the removal of the body were being made, Koen called Anderson by telephone from Granite Falls, inquiring what progress they were making, and on being told what had been done, directed him to get such help as he needed and bring the body down as soon as possible, saying he had arranged to have a car at Robe to carry the body on to Granite Falls. Anderson, with his assistants, thereupon carried the body to Robe on the hand sled, and from there to Granite Falls on a hand car, where it was delivered to an undertaker, who had been employed by Koen, for burial. The trip took the labor of seven men for four days, and cost them in expenses $34.30. For their services they demanded of Koen sums aggregating $352.30, and on his refusal to pay the same, Anderson took an assignment of the claims of his co-laborers, and brought the present action against Koen to recover the amount claimed to be

due. Koen denied liability, and at the trial below the court sustained his contention, dismissing the action. Anderson appeals.

Eccesrsky, some years before his death, was awarded a pension by the government, receiving in a lump sum some $1,900. Of this money, he entrusted to the respondent $1,400, and drew therefrom as his necessities required until the time of his death. At that time, there remained in the respondent's hands the sum of $40. He left no other estate whatever, and for a considerable time prior to his death had lived the life of a pauper in an old abandoned hotel building at Silverton.

The court rested his decision on the ground that there was no express promise on the part of the respondent to pay for the services rendered with respect to the carriage of the body, and that the presumption followed that he contracted on behalf of the estate of the decedent. The case of *Butterworth v. Bredemeyer*, 74 Wash. 524, 133 Pac. 1061, is cited as sustaining the contention, but we cannot think the case applicable. In that case, it was held that an ordinary direction to an undertaker to take charge of the burial of a deceased person did not create a primary liability on the part of the person giving the order to pay the expenses of the burial; that the presumption was that the contract was made on behalf of the estate; that the liability of the person giving the order was secondary to the liability of the estate, and that the primary fund must be exhausted before a resort could be had to the secondary fund. But here there was no primary fund. The decedent left no appreciable estate, and the persons performing the services were entitled to resort to the secondary liability in the first instance. Again, the services here requested were not ordinary burial services, such as the rule contemplates; they were services rendered in transporting the body from a distant place to the place of burial, where it could be turned over to an undertaker employed to perform the service of burial. The claim for such transpor-

tation, therefore, stands on the same plane as would the claim of a regular transportation company performing the same service, and the same acts which would create a liability in the one case create it in the other.

In this court, the further contention is made that there was in fact no direction given by the respondent for the transportation of the body from Silverton to its place of burial, that the telephone message sent by Kelley directing that the body be brought out regardless of expense, was the message of Kelley, and not the message of the respondent. But the evidence is ample to the effect that the respondent directed Kelley to send the message, and approved of its form after the manner in which it was worded had been made known to him. Moreover, his own direction, concededly sent to the appellant from Granite Falls, was ample to obligate him for the reasonable expenses of transporting the body.

On the question of the amount of the recovery, the evidence was to the effect that the services were reasonably worth ten dollars per day for each of the men employed, that it was reasonably worth $6 to make the sled and $10 to make the box used in the transportation of the body, and that the expenses of the party for meals and lodging was $34.30. These sums aggregate $330.30, and this sum we think the appellant entitled to recover.

The judgment is therefore reversed, and the cause remanded with instructions to enter a judgment in favor of the appellant (plaintiff below) in the sum of $330.30.

CROW, C. J., MOUNT, PARKER, and MORRIS, JJ., concur.