Probate Court of Montgomery County

IN RE GUARDIANSHIP OF MARY WILMUTH MILHOLLAND

Decided February 28, 1933.

*Daniel L. Dwyer,* for guardian.

*Francis C. Canny* and *Frank W. Nicholas,* for Bradford and Routsong, claimant.

WISEMAN, J.

The facts in this case may be stated briefly as follows:

On January 23, 1931, Mary Wilmuth Milholland was adjudged insane in the Probate Court of Montgomery county, Ohio, and committed to the Dayton State Hospital. Subsequent thereto the said Mary Wilmuth Milholland was given a trial visit by the Dayton State Hospital and on the 28th day of March, 1932 while she was out of the hospital on trial visit her husband, William E. Milholland, died, intestate, and a resident of Montgomery county, Ohio. The widow, Mary Wilmuth Milholland, together with several brothers of the deceased husband, went to Bradford and Routsong, undertakers, and thereupon the widow, Mary Wilmuth Milholland engaged said Bradford and Routsong, undertakers, to take charge of the body of the deceased. The brothers of the deceased assisted the widow in the choice of the casket and in making the funeral arrangements. The undertakers performed their services satisfactorily to all parties concerned. The widow since her commitment on January 23, 1931 has remained a ward of

the state, she never having been discharged from the Dayton State Hospital, and, consequently, at the time she engaged Bradford and Routsong to take charge of the funeral of her deceased husband she was under disability.

On June 2, 1932, Sylvia Higgins, a sister of the ward, Mary Wilmuth Milholland, filed an application in the Probate Court of Montgomery county, Ohio, to be appointed guardian of the person and estate of Mary Wilmuth Milholland. On July 22, 1932 the said Sylvia Higgins was appointed such guardian and qualified by giving the required bond.

On August 22, 1932 there was filed in the Probate Court of Montgomery county, Ohio, by Sylvia Higgins, the said sister of Mary Wilmuth Milholland, an application to relieve the estate of William E. Milholland from administration, under Section 10509-5 General Code of Ohio, which provides that the court may issue an order relieving the estate of the deceased from administration when it is satisfied that such an estate is of less value than $500.00. The only estate which the deceased left was a savings fund in the General Motors Corporation amounting to $65.00. The court granted the application and dispensed with the administration and ordered the $65.00 paid to the surviving spouse, Mary Wilmuth Milholland, as part of her set-off.

The testimony further shows that there existed on the life of the deceased, William E. Milholland, a policy of insurance in the Metropolitan Life Insurance ompany, the principal amount payable being $2,000.00 and the ward herein, Mary Wilmuth Milholland, being designated as sole beneficiary.

On August 3, 1932 Sylvia Higgins, as guardian for Mary Wilmuth Milholland, received the sum of $2,000.00 from the Metropolitan Life Insurance Company, which amount together with the $65.00 which was ordered paid to the surviving spouse, by the Probate Court, originally constituted the ward's entire estate.

The undertakers, Bradford and Routsong, having rendered their services, now desire to receive payment through the guardianship. The guardian, Sylvia Higgins on Jan-

uary 31, 1933, filed an application alleging the essential facts herein stated; the fact that out of said monies there remains a balance of $1677.00; that a claim has been presented to the guardian by said undertakers in the sum of $414.50, being the total claim for services rendered by said undertakers. The guardian prays for the direction of the court in the premises and asks that the rights of the ward be protected.

This matter came on for hearing and the testimony disclosed in addition to the facts herein stated that Mrs. Milholland, although being under disability and not able to contract in her own name, was in a good mental condition at the time she selected the casket and engaged the undertakers and was capable of understanding the nature of the transaction and conducted herself very much like a normal person would under similar circumstances. The casket which was furnished in this case was not the cheapest which could be purchased, and, on the other hand, was not an expensive casket and no extraordinary or unusual expense or extravagance has been shown by the facts. The undertakers have filed an itemized claim which shows for their services in conducting the funeral and furnishing the casket they have made a charge in the sum of $275.00. For embalming the body $25.00; for opening and closing the grave $54.50; for use of hearse $32.00; for the use of one limousine $24.00; for slippers $4.00.

The testimony in this case also discloses that the decedent was taken from Dayton to Sidney, Ohio, for burial, which entailed more expense than if said body had been buried in Dayton. The extra expense by reason of the burial being made in Sidney, Ohio is reflected in the items which are charged for the use of the hearse and limousine and for services in conducting the funeral.

The question for the court to determine in this case is whether the wife's estate is liable for the funeral expenses of her deceased husband when he leaves no estate and in case she has not personally contracted the obligation.

The fact that she was under disability at the time her husband died and at the time the services were rendered

eliminates the possibility that she could in any way be bound by contract. Therefore, the facts in this case present a clear-cut issue as to whether the wife's estate can be held for the reasonable funeral expenses of her deceased husband who left no estate.

Both counsel and the court have made a search in the law and find no recorded opinion in the state of Ohio on this proposition. This case therefore becomes one of first impression.

Let us reverse the facts and consider what obligation rests on the husband to pay the funeral expenses of the deceased wife. Prior to the enactment of the New Probate Code the law in the state of Ohio gave a third person, to-wit: an undertaker, the option to present his claim against the estate of the deceased wife, or against the surviving husband. If the husband paid the funeral expenses of his deceased wife, the more recent decisions hold that the husband was not entitled to reimbursement out of the wife's estate, where both estates had ample funds with which to pay the claim. *Phillips* v. *Tolerton, Exr.* 20 Dec. 249, affirmed 82 O. S. 403 (1910); *Humphrey* v. *Huff*, 35 C. C. 117, (1914); 20 C. C. (N. S.) 178; *Eveland* v. *Sherman*, 21 Dec. 726; 9 N. P. (N. S.) 559.

It has been repeatedly held that the administrator or executor of the wife's estate is allowed to pay reasonable funeral espenses for the deceased wife, and take credit therefor. One of the leading cases in Ohio on this question is the case of *McClellen* v. *Filson*, 44 Ohio State, 184. The facts in this case show that the husband took no action in any way to employ the undertaker. The son engaged the undertaker, and was subseqquently appointed executor of the estate of the decedent, and thereafter paid the claim of the undertaker. The facts further show that the husband had an estate out of which the undertaker's claim could have been paid. A daughter, who was also a legatee, under her mother's will, filed exceptions to the account in which she objected to the executor paying for the funeral expenses out of the assets of the estate. The first syllabus of that case reads as follows:

"Section 6090, Revised Statutes, which directs the payment of funeral expenses and those of last sickness, may apply to the estate of a deceased married woman, though such deceased left surviving her a husband having property."

The court in its opinion discusses the responsibility which rests upon the family and the obligation which rests upon the estate of the decedent with reference to expenses arising out of the last sickness and burial. On page 187 the court say:

"It is urged that such good reason is found in the fact that at common law there is a duty upon the husband to dispose of the body of his deceased wife by decent sepulture in a suitable place. This is conceded, and it is not intended here to weaken the force of that duty, nor to impair the liability of the husband for the expenses of such burial. But the husband may be without means and unable to procure the services of those whose business it is to bury the dead, though the wife leave an abundance. What shall be done in such case? Shall the body remain unburied? If in such circumstances it is proposed to resort to the wife's estate for such expenses, it must be upon some principle, some rule. What shall it be? We have seen that the law of contract does not aid. She can not, any more than could a deceased husband as to his funeral expenses, be presumed to have contracted. Plainly, then, it must be by the force of legislation. That we have, and if we apply it in any case to the estate of a deceased married woman, it is difficult to see why, upon principle, it should not be applied to all.

"We think the statute was based upon a well recognized necessity and that such debts may be regarded as created by statute from necessity, and as a charge upon the estate, the same as the necessary expenses of administration, and the statute as furnishing the rule of liability. *Patterson* v. *Patterson*, 59 N. Y. 574. The burial of the dead is a matter of necessity. The public health requires that it be done, and a proper public sentiment equally requires that it be done decently."

The court also in its opinion discusses the consideration of public policy and the necessity which arises by reason of the death of a person and the obligation which rests upon the family to compensate the person who renders the service, such as is rendered by an undertaker. On page 188 the court say:

"That the dead might have proper sepulture, a clear, easily understood provision as to recompense for the expense was required. That provision we find in the statute. The question then, is, do not considerations of public policy apply as well to the case of a married woman as to a man? The necessity in the individual instance may or may not be as great, but where is the difference in principle?"

This court approves of the reasoning in the *McClellen* case and believes the principles stated by the court to be fundamentally sound; and furthermore believes the same reasoning and sound principles can and should be applied if the facts are reversed. In other words, this court is of the opinion that on the broad ground of public policy and the necessity which arises by reason of the death of the husband, it was the duty of this ward, had she been able to contract in her own name to have engaged an undertaker and provided for the decent interment of her deceased husband. Had she been able to contract the court believes the obligations to assume this responsibility rested upon her alone, as she was the only one in the immediate family who should and could have discharged this responsibility. The deceased left several minor children of tender years who by reason of their minority were unable to assume any responsibility. The courts have held in several Ohio cases that there is a duty resting upon the surviving spouse to bury the deceased spouse. The court wishes to cite the case of *Evans* v. *Evans*, 12 N. P. (N. S.) 619 which holds that:

"It is the duty of the widow as the heir or next of kin of her deceased husband to dispose of his body in a reasonable and sanitary manner."

The court also wishes to cite the case of *Hardin* v. *Ehring*, 22 Ohio Appellate, 437 which approved the principal laid down in the Evans case.

We now desire to quote from Rockel's Complete Ohio Probate Practice, 4th edition, page 568, paragraph 649-A:

"Of course a wife's estate can not be held for the expenses of her husband's funeral, if he have an estate of his own, unless she has by contract obligated herself so to do. (Citing 21 Cyc. 1449; 13 Cyc. 274)

"If the husband has no estate is the wife liable? This has never been decided in Ohio. It would seem that the duties placed on husband and wife by statute, are somewhat reciprocal:

"If the husband is able he must support his wife; if he is unable, the wife must assist him so far as she is able. (Citing G. C. Sec. 7997)

"They contract toward each other obligations of mutual respect, fidelity and support. (Citing G. C. Sec. 7995)

"The author believes that under these statutes the wife is liable for the funeral expenses and those incurred during her husband's last illness, even where she has not directly contracted for them, and that the courts will finally so hold, where the husband has no estate."

The court is interested in the comment of the author in which he states that the duties placed on husband and wife by the statute are somewhat recripocal, and in a further comment that the courts will finally hold where the husband has no estate that the wife's estate will be liable for his reasonable funeral expenses.

The decisions in the state of Ohio seem to place the primary responsibility for the expenses of the burial of the wife upon the husband, rather than upon her estate. The court can well understand why that should be done, for the reason that Section 7996 General Code, by express provision, makes the husband the head of the family, and Section 7997 General Code makes the husband primarily liable for the support of his wife and family. Section 7997 also provides that "If he is unable to do so the wife must assist him so far as she is able." which places a secondary obligation upon the wife to support the husband and the family.

These two sections would seem to place the primary responsibility for the support of the family and as an incident of the support obligation on the broad ground of public policy and necessity the payment of reasonable expenses for the burial of the wife upon the shoulders of the husband, although as the court has heretofore stated the decisions hold that the personal representative of the wife may pay the funeral expenses of the deceased wife and take credit therefor, even though the husband has ample means with

which to pay the claim. The court must notice, however, another section of the General Code, to-wit: Section 7995, which has been quoted above, which provides that "Husband and wife contract towards each other obligations of mutual respect, fidelity and support." This section seems to place equal responsibility upon the husband and wife, and their obligations of support under certain circumstances are mutual. The whole trend of modern legislation is to carry the principle of the separate estate of the husband and wife into the field of separate and mutual responsibilities and obligations. The New Probate Code contains a section (10509-125) which entitles the husband to reimbursement from the estate of his wife for funeral expenses which he has paid, providing the rights of other creditors are not prejudiced thereby. The effect of this section is to cause the estate of the wife to carry the burden of the wife's burial expenses even though the husband has paid for such services out of his own estate, and even though he has ample funds with which to pay the claim.

The state legislature has gone beyond the point where the courts of the state have been willing to go by fixing the obligation to pay for the funeral expenses of the deceased wife upon the wife's estate in almost every instance. As the court has heretofore stated the trend of such legislation is to carry the theory of separate estates between husband and wife into the field of separate responsibilities and obligations.

On the question of the wife's statutory obligation to support the family it has been held by courts in the state of Ohio that the wife is liable for the support of the husband if he is unable to support himself. *Hickle* v. *Hickle*, 6 C. C. 490. *Albert* v. *Albert*, 7 Ohio Appeals, 156. *Baughman* v. *Baughman*, 7 O. Dec. 433; 7 N. P. 328.

After a careful search through reference books we have been able to find but very few cases decided by courts of other jurisdictions bearing upon this subject. Perhaps the case that comes as near deciding the question is the English case of *Chapple* v. *Cooper*, 13 Mees. & Wells, page 252. (1844). The syllabus of this case reads as follows:

"An infant widow is bound by her contract for the furnishing of the funeral of her husband who has left no property to be administered."

This case having been decided by a court in a country which gave birth to the common law, and where persons under disability were extended the protection of the law, except for necessities furnished them, should be given some weight in attempting to establish a principle of law which should govern the court in its legal conclusion. A close reading of the English case will disclose that the court did not rest its opinion upon the ground of necessaries furnished to the widow, but rather worked it out on the ground that the marriage relation itself imposed certain duties and obligations upon the surviving spouse. The court reasoned that considering the circumstances of death of the husband and the necessity for a decent burial, what was required in such instance was for the benefit of the wife.

An investigation of all of the opinions bearing upon this subject discloses that the courts in various jurisdictions have worked out a liability on different grounds. In point of time the next case bearing upon this subject is *Hoffman* v. *Kanze*, 27 New York supplement, page 260, (1894); 7 Misc. Rep. 237. The syllabus of that case reads as follows:

"Funeral expenses for the burial of a husband are collectible from the widow if the funeral was given on her credit.

"In an action against a widow for funeral expenses of her husband, the court charged that if, at the time of ordering the goods, there was no contract as to who should pay for them, plaintiff had a right to claim payment from the estate and could not claim it from defendant. *Held,* error; that he should have charged that defendant was personally liable unless there was a special understanding by the plaintiff not to look to her individually, but to the estate after she had been appointed to represent it."

This court apparently rested its opinion on the presumption that, if there is no evidence to the contrary, the widow in arranging for the funeral should be charged personally, since credit was extended to her, and that she should be relieved only if a special understanding is had with the undertaker to charge the estate and not the widow.

The court wishes to cite the case of *Butterworth & Sons* v. *Teale*, 54 Wash. 14 (1909) ; 102 Pacific Reporter 768. The syllabus of this case reads as follows:

"The wife's separate estate is liable for the funeral expenses of her husband, he having left no property, where the services were rendered with her knowledge and consent."

This court cites the *Chapple* v. *Cooper* case, decided by the English courts, with approval. The court finds in this case that there was no express contract made by the widow for the rendition of the services, but that she had knowledge of the same and consented thereto.

On page 17 the court say:

"If the funeral expenses are to be treated as necessaries, then clearly the wife is not responsible, as her separate estate is not liable for her husband's or her families' necessaries at common law. But if the obligation rests on the ground of duty arising from the marriage relation, then it seems to me just as clear that the wife may be charged personally with the expenses of burial. This latter view is, to my mind, the correct one, as the right of the wife to the body of her deceased husband is the same as the right of the husband to that of his wife."

The Washington opinion apparently rests upon the same ground as the English opinion, that a liability should be imposed in such instance by virtue of the marriage relation, and not on the ground of the furnishing of necessaries to the family or to the wife.

The court wishes to cite another Washington case, *Butterworth* v. *Bredemeyer*, 74 Wash. 524 (1913). The syllabus on this case reads as follows:

"Under Rem. & Bal. Code, Section 1568 making the funeral expenses a preferred claim against the estate, the wife's liability for her husband's funeral expenses is secondary and not primary, and in the absence of an express promise cannot be enforced until the creditor has exhausted his remedy against the estate.

"A mere direction to furnish service for a husband's funeral is presumed to be made on the faith of the credit of the estate, and does not imply a promise to pay for the same."

This court cites the previous Washington decision of *Butterworth* v. *Teale,* with approval. It makes a distinction between the primary and secondary liability of the widow for the funeral expenses of the deceased husband, basing it on a statutory provision which makes the funeral claim a preferred one in the payment of debts. The Washington court, however, differs from the New York court in that it holds that there is no presumption that credit is extended to the widow, personally, rather than to the estate, in the absence of an express contract. The Washingon court holds that on the other hand the presumption is that the services were rendered on the faith of the credit of the estate, whereas, the New York court holds that the presumption is, in the absence of an express contract, that the services were rendered on the faith of the credit of the widow who arranged for the funeral.

An examination of these authorities will disclose the unsettled condition of the law on the subject. There are only a few opinions which can be found which in any way attempt to work out a liability under such circumstances. Perhaps the reason for the scarcity of law on the subject is due to the fact that under the common law the courts have uniformly held that there was no liability in such instance resting upon the wife and widow. It has only been since new legislation has been enacted, extending equal, or nearly equal, rights to both husband and wife in property, and giving each the right to contract in their own name, and other legislation which has attempted to impose mutual obligations of fidelity, respect and support upon them, that the courts have in recent years attempted to work out some principle of law whereby, in the absence of an express contract, the widow would be liable for the funeral expenses of her deceased husband in case he left no estate.

The court has investigated the law with reference to the liability of the husband to pay for the funeral expenses of the deceased wife and also the responsibility which rests upon the wife to bury the deceased husband, and to review at some length the fundamental principles of law on which said legal obligations rest, in order to arrive at some con-

clusion in this case with reference to the obligation of the estate of Mrs. Milholland to pay for the reasonable funeral expenses of her deceased husband, who left no estate.

After a close consideration of the decisions with reference to the reciprocal rights and obligations of the husband and the wife, especially with reference to the obligations of the surviving spouse to provide a decent burial for the deceased spouse, and bind his or her estate for the expenses incurred incident to such burial, and their mutual obligations and responsibilities by virtue of Section 7995, 7996 and 7997 General Code of Ohio, the court finds that on the broad ground of necessity and on the broader ground of public policy, it was the duty of Mary Wilmuth Milholland to take charge of the body of her deceased husband and to see that it was given decent burial. Since she was not able to contract, being under disability, the court finds that her estate is liable for the reasonable expenses incurred in such burial, since her deceased husband left no estate whatsoever.

What are reasonable funeral expenses is a question of fact which the court must determine after giving consideration to the amount which was found necessary to bury the decedent in the style usually adopted for persons of like rank and station in life. As it is stated in Rockel, under paragraph 650:

"Public opinion and general expectation, fashion, the feelings of friends and neighbors, the age, standing, property, the habits of life of the decedent, as well as the standing and rank in society of the surviving family, must all be considered."

The deceased husband, William E. Milholland, resided on Patterson Road, which is a new sub-division in the suburbs of Dayton, in a community in which people of average income reside. He was employed prior to his death at the Frigidaire Corporation as a "packer" and for some time prior to his death was on short time, earning between $20.00 and $25.00 per week. During normal times when he was able to be employed on full time his earnings were far in excess of this amount. His associations and friends

were the average people who are commonly designated as the middle class.

After hearing all of the evidence in this case with reference to the decedent's earning capacity, his situation in life, the community in which he lived, the friends with whom he associated and the necessities of the occasion, the court has no hesitation in finding that the funeral expenses incurred were reasonable and that the size of the estate of the ward herein is ample to take care of these expenses. The court finds that the undertaker's claim only covers those matters which were absolutely necessary for the decent burial of the deceased; that no items of extravagance are shown in any particular and that the claim is just and reasonable and should be paid.

Therefore, the court will instruct the guardian to pay the claim of Bradford and Routsong, undertakers, in the sum of $414.50 out of the estate of her ward and take credit therefor.