[No. 26276. *En Banc.* February 18, 1937.]

MORTON C. SEELYE, *Appellant,* v. NORTH PACIFIC MORTGAGE COMPANY et al., *Respondents.*[1]

¹Reported in 65 P. (2d) 218.

*Chas. A. Johnson,* for appellant.

*W. H. Patterson, Carl W. Bordsen,* and *H. A. Davis,* for respondents.

Tolman, J.—Tonasket-Okanogan Orchards, Inc., a corporation (hereinafter called the orchards company), the owner of certain improved orchard land in Okanogan county, executed and delivered a mortgage on it to the North Pacific Mortgage Company, a corporation. Thereafter, the orchards company became insolvent, and, in an action brought by one of its creditors, a general receiver was appointed for it by the superior court for Okanogan county. The receivership continued for several years, during which time the receiver had charge of, and operated, the orchard. A number of creditors presented claims, which were allowed and approved by the receiver and the superior court and filed in the cause. One of such creditor's claims was in favor of the Hans Lund estate, of which Arthur Lund, Hugo Lund, and Soren Petersen were executors.

After the receiver took charge of the property, the North Pacific Mortgage Company foreclosed its mortgage, making the receiver and others parties defendant in the action. A decree of foreclosure was entered and the property sold, in May, 1934, at sheriff's sale, to the mortgage company, to whom the sheriff delivered a certificate of sale. Thereupon, about the first of March, 1935, the mortgage company, purchaser at the sheriff's sale, entered into an executory real estate contract with Morton C. Seelye, the plaintiff in the present action, by which it agreed to sell, and he agreed to buy, the real property. Seelye, without objection on the part of anyone, entered into possession of the property, purchased the greater portion of the personal property and equipment that the receiver had used on the prem-

ises, and spent a very considerable amount of money in caring for, and improving, the orchard property.

It may be here mentioned that, during the year 1935, the receivership was closed, including the sale of a small amount yet remaining of the assets of the estate, the proceeds of which were applied pro rata in partial payment of a large number of creditor's claims, including the claim of the Lund estate. No attempt was made in the receivership to inventory or sell any right of redemption from the sheriff's sale of the real property.

Whether important here or not, it may be also mentioned that, two or three days before the expiration of the statutory period for redemption, the mortgage company, purchaser at the sheriff's sale, assigned the sheriff's certificate of sale to Henry Petersen, and assigned to him at the same time its rights under the Seelye executory real estate contract; the existence of which contract and the fact that Seelye under the contract had taken actual possession of the premises were well known to Henry Petersen and the executors of the Hans Lund estate.

The executors of the Lund estate gave the sheriff written notice of intention to redeem the property from the foreclosure sale. Thereupon, Seelye instituted the present action, naming the North Pacific Mortgage Company, a corporation, Arthur Lund, Hugo Lund, and Soren Petersen, executors of the Hans Lund estate, Henry Peterson, and E. B. Hilderbrand, sheriff of Okanogan county, as defendants, objecting to the proposed redemption.

All of the defendants appeared in the action, the trial of which resulted in a judgment that the executors of the Hans Lund estate were entitled to redeem and were entitled to a sheriff's deed accordingly.

Plaintiff Seelye has appealed.

The ultimate and controlling question is a narrow

one, and must be determined by the terms of the statute upon the subject of redemption from sale.

Rem. Rev. Stat., § 594 [P. C. § 7909], provides that property subject to redemption may be redeemed by the following persons or their successors in interest:

"1. The judgment debtor or his successors in interest, . . .

"2. A creditor having a lien by judgment, decree or mortgage, on any portion of the property, or any portion of any part thereof, separately sold, subsequent in time to that on which the property was sold. The persons mentioned in subdivision two of this section are termed redemptioners."

Subdivision (1) of the section clearly is not applicable. The executors of the Lund estate were not judgment debtors, nor successors in interest of the judgment debtor.

Nor are the executors entitled to the right of redemption under subd. (2) of the section. Here, the executors or the estate they represent had no lien by judgment, decree or mortgage upon the property or any of it sought to be redeemed. The only thing they had was the allowance and approval of an unsecured creditor's claim in the receivership proceedings. The order allowing the claim did not declare or adjudge that the amount should be a lien upon any or all of the property of the insolvent estate; nor that the amount of the claim thus allowed should be a judgment at all so that, by the filing of it, the same would become a lien upon real property of the debtor in that county. The order had no other or further effect than to make the claim an approved one, to be paid in the due course of the settlement of the insolvent estate.

Judgment reversed, and the cause remanded with directions to enter judgment for the appellant.

STEINERT, C. J., MAIN, BEALS, MILLARD, BLAKE, GERAGHTY, and ROBINSON, JJ., concur.

HOLCOMB, J. (dissenting)—Appellant bought the land under a specific agreement between him and respondent, the mortgage company, that its title was merely that of a holder of a sheriff's certificate of sale, and that the land was being sold to appellant *subject to any and all rights of redemption.* A written contract was thereafter entered into on March 1, 1935, stating that specifically.

The Lund estate could not maintain an independent action and obtain a judgment because the property was in the receivership. The receiver made no attempt to redeem, and no creditor made any attempt to redeem except the Lund estate, which was a *bona fide* creditor, having a claim which had been allowed without objection by the receiver and the court in the sum of $925, *which was all made of record.*

Had the Lund estate been allowed to bring suit and obtain judgment against the insolvent corporation, it would have had a lien against the land for the above amount.

To determine, on the mere letter of the statute, that the Lund estate was not, and could not be, a redemptioner, is exceedingly technical, inequitable, and unjust.

I therefore dissent.