LANG'S ESTATE v. COMMISSIONER OF INTERNAL REVENUE.

COMMISSIONER OF INTERNAL REVENUE v. LANG'S ESTATE.

No. 8459.

Circuit Court of Appeals, Ninth Circuit.

June 27, 1938.

868

H. B. Jones and Robert E. Bronson, both of Seattle, Wash., for petitioner.

Claude I. Parker, Ralph W. Smith, J. Everett Blum, Lloyd Rainey, Martin Gang, and Robert E. Kopp, all of Los Angeles, Cal., amici curiæ.

James W. Morris, Asst. Atty. Gen., and Sewall Key, Berryman Green, and Helen Carloss, Sp. Assts. to Atty. Gen., for respondent.

Before DENMAN, MATHEWS, and HEALY, Circuit Judges.

DENMAN, Circuit Judge.

The Estate of Julius C. Lang, deceased (a former resident of the State of Washington), and his executors petition to review a decision of the United States Board of Tax Appeals sustaining in several respects the Commissioner's determination of a deficiency in estate taxes. The Commissioner has taken a cross-petition from the Board's decision, complaining of its failure to sustain his determination of deficiency in full. Decedent died in December, 1929, and the tax liability is governed by the Revenue Act of 1926, particularly sections 302 and 303 thereof, 26 U.S.C.A. §§ 411, 412 notes.

### The Taxpayers' Petition

Considering first the taxpayers' petition, four issues have been presented for our consideration, with which we will deal in the order raised.

First. The gross estate of the decedent consisted in part of proceeds of life insurance policies on his own life, some payable to his wife and some to his children. Their inclusion to the full amount (over $40,000 exemption) in the gross estate under section $302(g)$[1] was resisted by the taxpayers on the ground that one-half of the portion of the proceeds of policies on which the premiums were paid out of community funds of the decedent and his wife were property of the wife and not includable in the gross estate.

The Commissioner contended that the law of Washington determining the relative interests of the husband and wife, as members of the marital community, in the policies, had no relevancy to the claimed tax liability of the husband's estate. He cites the decision of this court to that effect as reported in Bank of America v. Com'r., 9 Cir., 90 F.2d 981, where, at page 983, this court held, in refusing to accept the taxpayer's claimed effect of the Washington community law in determining liability under section 302(g) that:

"There is nothing in the instant statute which says or implies that its operation is dependent upon local law. * * *

\* \* \* \* \* \*

"Therefore, whatever the local law may be, we believe it to be immaterial, and the Board's decision to be correct under Chase National Bank v. United States, supra. Petitioner says that case is distinguishable because there the insured paid all the premiums. See 278 U.S. 327, at page 333, 49 S.Ct. 126, at page 127, 73 L.Ed. 405, 63 A.L.R. 388. That is a distinction without a difference, for the fact is immaterial to our view."

There was a dissent and this court was faced with the situation where the decision of two judges of the circuit made a precedent for the remaining five. The three judges sitting in this review did not agree with the decision in the Bank of America Case. Since no more than three judges may sit in the Circuit Court of Appeals, there is no method of hearing or rehearing by a larger number.[2] Hence, rather than overrule the holding of the Bank of America Case, it was decided to present a certificate to the Supreme Court

---

[1] "[Sec. 302.] The value of the gross estate of the decedent shall be determined by including the value at the time of his death of all property, real or personal, tangible or intangible, wherever situated——

\* \* \* \* \* \*

"(g) To the extent of the amount receivable by the executor as insurance under policies taken out by the decedent upon his own life; and to the extent of the excess over $40,000 of the amount receivable by all other beneficiaries as insurance under policies taken out by the decedent upon his own life." U.S.C. Title 26, Sec. 411(g), 26 U.S.C.A. § 411(g).

[2] The Act creating the Circuit Courts of Appeals specifically made more than three judges competent to sit and also any of the district judges of the circuit properly called. Those specifically named were the Chief Justice, the Associate Justice assigned to the circuit and the circuit judges. Sec. 1 of the act provides for an additional circuit judge in each circuit, making five judges then eligible for the Second Circuit and four for the others.

"Sec. 3. That the Chief-Justice and the associate justices of the Supreme Court assigned to each circuit, and the circuit judges within each circuit, and the several district judges within each circuit, shall be competent to sit as judges of the circuit court of appeals within their respective circuits in the manner hereinafter provided. In case the Chief-Justice or an associate justice of the Supreme Court should attend at any session of the circuit court of appeals he shall preside, and the circuit judges in attendance upon the court in the absence of the Chief-Justice or associate justice of the Supreme Court shall preside in the order of the seniority of their respective

disclosing the conflict between the two groups of judges and asking that it be resolved by that tribunal. ·

The Supreme Court responded by deciding that the Washington community law should be considered in determining the tax liability:

' "Occasion for the certificate did not arise from doubts relating to the meaning of the community property laws of Washington, but from uncertainty concerning the application of the 1926 Revenue Act to an estate under administration in that State. The court was perplexed by Bank of America v. Commissioner of Internal Revenue, 9 Cir., 90 F.2d 981, 983, which affirmed that the operation of that Act is not dependent upon local law and 'therefore, whatever the local law may be, we believe it to be immaterial.' This statement is not accurate and conflicts with what we have said. Poe v. Seaborn, 282 U.S. 101, 111, 112, 51 S. Ct. 58, 59, 75 L.Ed. 239; Blair v. Com'r, 300 U.S. 5, 9, 10, 57 S.Ct. 330, 331, 332, 81 L.Ed. 465." Lang v. Com'r, 58 S.Ct. 880, 882, 82 L.Ed. ——, May 16, 1938.

The certificate also sought the Supreme Court's solution of the several questions of law, for which the taxpayers contended, controlling the portion of the insurance policies to be deemed included in the decedent's estate. These the Supreme Court resolved in favor of the taxpayers, holding:

"1. ·Must the total or only one-half of the proceeds collected under the insurance policies issued after marriage on the deceased husband's life be reckoned as part of his gross estate, the wife being sole beneficiary and all premiums having been paid from community funds? To this we answer, only one-half.

"2. Must the total proceeds of the policy upon a decedent's life, taken out after marriage, children being the sole beneficiaries, and all premiums having been paid from community funds, be reckoned as part of his gross estate; or, in the circumstances,. is only one-half to be included? To this we reply, only one-half should be included.

"3. Must all proceeds of the policies issued before marriage upon the deceased husband's life be reckoned as part of his gross estate, the wife being sole beneficiary, the first premium having been paid from his separate funds, and all subsequent ones from community funds; or, in the circumstances, is the total received under the policy reduced by one-half of that proportion of such total which premiums satisfied with community funds bear to all premiums paid, the amount to be regarded as belonging to the gross estate? To this we reply, only the total proceeds less one-half of the. indicated proportion becomes part of the gross estate."

' Lang v. Com'r, supra.

Second. During his lifetime the decedent had contracted, on behalf of the community, debts aggregating $716,232.99. The executors seek to deduct the full amount of such liabilities from the gross estate under section 303(a) (1),[3] Revenue Act of 1926, which provides:

commissions." Sec. 3, Act of Mar. 1891, Ch. 517, 26 Stats. p. 827, 28 U.S.C.A. § 216.

Nevertheless Congress has created the court to consist of but three judges, Sec. 2 of the same Act (p. 826, 28 U.S.C.A. § 212) providing:

."Sec. 2. That there is hereby created in each circuit a circuit court of appeals, which shall consist of three judges, of whom two shall constitute a quorum, and which shall ·be a court of record with appellate jurisdiction, as ' is hereafter limited and established. * * * "

Obviously if this were a three-judge court, when five specifically. and all the district judges were made competent to sit to constitute a "full" court "which shall consist of three judges", it is not enlarged to a four-judge or five or more judge court because there are now more circuit judges competent to participate in its sessions.·

Any other interpretation of the legislation would lead to grave difficulties of administration. If, because there are four or six circuit judges in a circuit, a four or six-judge court were deemed created by Congress, then each judge may well have the right and the duty to demand his place in the hearing on each appeal. This would lead to the embarrassment of an evenly divided court. More important still, it would increase so greatly the amount of work of each individual judge that it would cause again the arrearages which the additional judges have been created to remove.

[3] "[Sec. 303.] For the purpose of the tax the value of. the net estate shall be determined——

"(a) In the case of a resident, by deducting from. the value of the gross estate——

"(1) Such amounts for funeral expenses, administration expenses, .claims

"For the purpose of the tax the value of the net estate shall be determined—

"(a) In the case of a resident, by deducting from the value of the gross estate—

"(1) * * * claims against the estate * * *."

Article 36 of Commissioner's Regulations 70 provides:

"Claims Against the Estate.—The amounts that may be deducted under this heading are such only as represent personal obligations of the decedent existing at the time of his death, whether then matured or not, but only to the extent that the liability therefor was incurred or contracted bona fide and for an adequate and full consideration in money or money's worth. Only claims enforceable against the estate may be deducted * * *."

The Commissioner determined and the Board approved his determination that the community debts, being chargeable against the community property as a whole, are not deductible against the gross estate of the decedent to the full amount, but only to the extent of one-half thereof. Such holding is based on section 1342, Remington's Revised Statutes of Washington, vol. 3:

"Upon the death of either husband or wife, one-half of the community property shall go to the survivor, *subject to the community debts,* and the other half shall be subject to the testamentary disposition of the deceased husband or wife, *subject also to the community debts.* * * *" (Emphasis supplied.)

The Commissioner's position is in substance, that for the duration of the marriage, the community, as an entity separate from either husband or wife, is obligated for community debts. Death, dissolving the community, operates to charge such debts both upon the one-half belonging to the wife and on the remaining half subject to the testamentary disposition of the husband. Hence only one-half of such a community debt can be said to be a "personal obligation of the decedent existing at the time of his death" within the meaning of the quoted regulations, or a claim against his estate within the meaning of section 303(a) (1) of the Act.

The taxpayers concede that the community obligation and death statute of Washington are as contended by the Commissioner. They point out, however, that under the law of Washington a husband is personally liable for community debts, as fully as is the community itself. Mattinson v. Mattinson, 128 Wash. 328, 330, 222 P. 620, and cases there cited. Hence, it is argued, his personal estate or the entire share of the community subject to his testamentary disposition after his death is liable for the entire community debt, as well as the total community property per se. Therefore, they claim, the entire amount of these community debts should be deducted from the gross estate.

■■ On this issue we think the Board was correct in permitting a deduction of only one-half of these community obligations. Regardless of the incidents of the husband's personal liability for community debts during his lifetime, section 1342, Remington's Revised Statutes, supra, as construed by the Supreme Court of Washington, requires that community debts be satisfied pro rata from that portion of the community property distributable to the wife and that portion subject to the husband's testamentary disposition. It is only by provision of a deceased husband's will that a community debt may be charged solely against his share of the community. Redelsheimer v. Zepin, 105 Wash. 199, 202, 177 P. 736; In re Hart's Estate, 150 Wash. 482, 492, 273 P. 735.

■ If there be sufficient community property in the estate to discharge the obligations here in issue, then no more than one-half can be termed personal obligations of

---

against the estate, unpaid mortgages upon, or any indebtedness in respect to, property (except, in the case of a resident decedent, where such property is not situated in the United States), to the extent that such claims, mortgages, or indebtedness were incurred or contracted bona fide and for an adequate and full consideration in money or money's worth, losses incurred during the settlement of the estate arising from fires, storms, shipwreck, or other casualty, or from theft, when such losses are not compensated for by insurance or otherwise, and such amounts reasonably required and actually expended for the support during the settlement of the estate of those dependent upon the decedent, as are allowed by the laws of the jurisdiction, whether within or without the United States, under which the estate is being administered, but not including any income taxes upon income received after the death of the decedent, or any estate, succession, legacy, or inheritance taxes [U.S.C. Title 26, Sec. 412, 26 U.S.C.A. § 412 note]."

the decedent. The taxpayers have not sustained their burden of proof of lack of sufficient community property or any other facts which would overcome the presumption of the correctness of the Commissioner's determination of their tax liability. Welch v. Helvering, 290 U.S. 111, 115, 54 S.Ct. 8, 9, 78 L.Ed. 212; Peerless Inv. Co. v. Commissioner, 9 Cir., 80 F.2d 427, 429.

Third. A portion of the indebtedness just discussed, which taxpayers sought to deduct from the gross estate, was composed of three notes in the amount of $10,000 each, one of which was given by the decedent to each of his three children. The Commissioner and the Board of Tax Appeals disallowed this deduction on the ground that the notes represented gifts to the children and hence were not obligations contracted for an adequate consideration within section 303(a) (1) supra, which allows the taxpayer to deduct "claims against the estate * * * to the extent that such claims, mortgages, or indebtedness were incurred or contracted bona fide and for an adequate and full consideration in money or money's worth".

The Board found that the decedent wrote his children advising each that he had made a gift to him of $10,000. Subsequently the notes were placed in safe deposit vaults to which the children had access.

Taxpayers contend that the decedent first made a gift of the money then borrowed it back from the children, giving the notes in return. If such was the true state of affairs, then the notes subsequent to the completed gift would have been given in a full consideration in money's worth.

The argument must fail for lack of any factual basis to support it. There is neither evidence nor finding that any money or notes were delivered to the children of decedent before the notes in issue here were placed in the vault to which they had access. Decedent's intention to make a gift was inoperative until he placed the notes at the donees' disposal. The notes constituted the gift, hence were not claims or indebtedness contracted for consideration in money or money's worth. On this issue the Board is clearly correct.

Fourth. Among the items deductible from the gross estate under section 303(a) (1), supra, are "administration expenses". It is conceded by all parties here that the practice in Washington, followed in this case, is to administer the entire community property estate, notwithstanding that the "estate" of a deceased spouse, for both federal and state estate taxes comprises only one-half the community property. Revenue Act of 1926, section 302, supra; Remington's Rev.Stats. of Washington, sections 1342, 11202.

Hence the parties agreed that the general administration expenses, incurred in settling all the property of decedent and his wife, should be halved, and one-half only be allowed as a deduction for administration expenses under section 303(a) (1), supra.

However, the Board found that two administration items, $2,500 and $388.35, attorney's fees and expenses respectively, were incurred "in connection with the settlement and adjustment of the tax liability of the Federal and state estate taxes".

Taxpayers urge that inasmuch as the federal and state death taxes are levied only against the one-half of the community property which is subject to testamentary disposition, therefore these two items, incurred solely in connection with such taxes, should be held an administration expense against the deceased husband's half of the community only and hence deductible in full.

The Board ruled that only one-half of these two items was chargeable to the decedent's half of the community, and hence only one-half was deductible as an administration expense. In spite of its specific finding that these fees and expenses were incurred in the settlement of federal and state tax liability, the Board went on to say that they "were * * * incurred by the executors in the course of the administration and settlement of the whole of the community estate".

We hold that the Board was in error in not permitting the full deduction of these items. It is immaterial that the expense was incurred in the course of the administration of the entire community estate. They were incurred solely for and on behalf of that portion of the community estate which was subject to decedent's disposition and which made up the "estate" subject to tax by the state and federal governments. The portion of the community automatically distributed to the decedent's wife, and which is no part of the gross estate under the Revenue Act, was unconcerned with such tax liability and derived

no benefit from the services rendered and expenses incurred.

### Cross-Petition of Commissioner of Internal Revenue

The taxpayers expended for funeral services and a crypt for the decedent the sum of $7,941.45. They deducted this amount from the gross estate pursuant to section 303(a) (1), supra, which allows as a deduction:

"(1) Such amounts for funeral expenses * * * as are allowed by the laws of the jurisdiction, whether within or without the United States, under which the estate is being administered."

It is stipulated that the amount in question was allowed by the probate court of the State of Washington under sections 1541 and 1545, Remington's Rev.Stats. of Washington:

"§ 1541. *Order for payment of debts.* The debts of the estate shall be paid in the following order:

"(1) Funeral expenses in such amount as the court shall order. * * *"

"§ 1545. *Expense of monument.* Executors and administrators of the estate of any deceased person are hereby authorized, by and with the consent of the court, to expend a reasonable amount out of the estate of the decedent to erect a monument or tombstone suitable to mark the grave or crypt of the said decedent, and the expense thereof shall be paid as the expenses of administration are paid."

The Commissioner did not contest the reasonableness of the amount deducted by the taxpayers or their proper authorization to expend the sum from the state court. He disallowed one-half the claimed deduction, however, on the ground that funeral and monument expenses are a liability against the entire community property of decedent and surviving spouse. Consequently, he claimed, but one-half was properly chargeable to the decedent's estate as distinguished from the entire community property estate.

The Board of Tax Appeals ruled in favor of the taxpayers and held the entire amount deductible, on the theory that all such funeral and monument expenses were, under the law of Washington, a charge strictly against the decedent's estate.

At the time the Board made its decision herein, the law of Washington was silent as to the question of the liability of the whole community property for such expenses. It had been held, however, that the estate of a deceased spouse was primarily liable, and a surviving spouse who paid such funeral costs could recover the same from the decedent's estate. Smith v. Saul, 128 Wash. 51, 52, 221 P. 977; Corporate Loan & Security Co. v. Flindall, 124 Wash. 120, 122, 213 P. 450; Butterworth v. Bredemeyer, 74 Wash. 524, 528, 133 P. 1061.

The community property problem was not present in any of these decisions. In none of them does it appear that there was or was not any community property in the estate of the deceased spouse. In the recent decision of Wittwer v. Pemberton, 188 Wash. 72, 78, 61 P.2d 993, 65 P.2d 218, the question was squarely presented whether for purposes of the state inheritance tax the funeral expenses should be deducted in their entirety or to the extent of one-half only. Refusing to follow the decision of the Board of Tax Appeals in this case (which decision was called to the court's attention) the court said:

"As above stated, little authority exists which is helpful in determining the precise question here presented. We are free, therefore, to adopt that rule which seems to us the better. The estate of a deceased is liable for reasonable funeral expenses and for the cost of a suitable monument or crypt. While the community is dissolved upon the death of either spouse, we think that the liability for the proper interment of the deceased remains a primary community obligation. Whether or not the community estate should, in certain instances, be reimbursed out of the separate estate of the decedent need not be here determined. * * *

"We hold that the obligation of the community to provide a decent funeral and monument for a deceased member thereof is a primary obligation, and that for the purpose of computing the inheritance tax due to the state, the amount of such expense should be deducted from the entire estate, and not from the one-half thereof which passes by inheritance."

Wittwer v. Pemberton, 188 Wash. 72, 78, 61 P.2d 993, 995, 65 P.2d 218.

The Wittwer Case is clearly controlling, being the latest and only decision in Washington as to the nature of the funeral obligation as between the entire communi-

ty property and the decedent's one-half thereof. Such being the law, the Commissioner correctly allowed but one-half of the claimed deduction.

The case is remanded to the Board of Tax Appeals with directions to redetermine the deficiency in accordance with the decision of the Supreme Court of the United States in Lang v. Commissioner, supra, and in accordance with the views expressed in this opinion.